# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO: 11-189-11 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| MAYO BARNES | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Record Documents 498, 516, 517, & 543],[1] filed by defendant Mayo Barnes ("Barnes"). The United States responded to the motion [Record Document 521], and Barnes filed a reply thereto [Record Document 525]. For the following reasons, the motion is **DENIED**.[2]

## BACKGROUND

On July 29, 2011, a grand jury in the Western District of Louisiana returned a fourteen-count indictment charging eleven defendants, including Barnes, with various drug offenses. Record Document 14. Barnes was named in Counts One (conspiracy to possess with intent to distribute methamphetamine) and Fourteen (possession with intent to

---

[1] On May 17, 2017, Barnes filed a letter supplement in the record. See Record Document 585. The substance of that letter is duplicative of and subsumed by other filings submitted by Barnes related to his § 2255.

[2] Because Barnes's claims are contrary to law and plainly refuted by the record, no evidentiary hearing is required. See United States v. Green, 882 F.2d 999, 1008 (5th Cir. 1989). Barnes's motion for an evidentiary hearing [Record Document 544] is **DENIED**.

distribute methamphetamine). Attorney Paul Carmouche ("Mr. Carmouche") was appointed to represent Barnes. Record Documents 6 & 11.

## I. Guilty Plea.

On December 5, 2011, with the advice of Mr. Carmouche and pursuant to a plea agreement, Barnes pled guilty to Count Fourteen. Record Documents 198 & 199. During the guilty plea colloquy, the Court engaged in the following exchange with Barnes:

| The Court: | And, sir, could you tell me in your own words what you believe you are charged with in the indictment? |
| The Defendant: | Possessing methamphetamine. |
| The Court: | And it's possession with intent to distribute to distribute [sic]; did you understand that? |
| The Defendant: | Yes, ma'am, I understood that. |
| The Court: | What about the amount, the 50 grams? Do you agree that that's the amount? |
| The Defendant: | Yes, ma'am. |
| The Court: | Okay. How do you wish, sir, to plead in this matter? |
| The Defendant: | Guilty. |

Record Document 378, pp. 4-5.

Hank Haynes, a Louisiana State Trooper assigned to the DEA Task Force ("Trooper Haynes"), testified to the factual basis necessary to support the guilty plea. He explained that Barnes's co-defendant, Lauralyn Thompson ("Thompson"), began cooperating with authorities in this drug investigation. Id. at p. 6. Thompson ordered a half pound of methamphetamine from co-defendants Dwight Moody ("Moody") and Terry Pimpleton

("Pimpleton"). Id. at pp. 6 & 9. Moody, in turn, hired Barnes to travel via Greyhound bus from Shreveport, Louisiana, to Dallas, Texas to obtain the methamphetamine from Pimpleton and then to bring the methamphetamine back to Shreveport. Id. at pp. 9-10 Upon Barnes's arrival in Shreveport, Pimpleton picked up Barnes and the drugs from the Greyhound bus station. Id. at p. 10. At the guilty plea hearing, Barnes agreed that Trooper Haynes's factual recitation, outlined above, was correct. Id. at p. 11. Barnes agreed that the quantity of methamphetamine was fifty grams or more. When asked whether he was pleading guilty because he was, in fact, guilty as charged, Barnes responded, "Yes, ma'am." Id. at p. 17. He answered the same way when asked whether his guilty plea was "a free and voluntary act on your part done with the advice and consent of Mr. Carmouche." Id.

With respect to the penalty he was facing, Barnes knew that Count Fourteen carried a mandatory minimum sentence of ten years. Record Document 199, p. 2; Record Document 378, pp. 19-20. Further, Mr. Carmouche stated at the guilty plea hearing, "Your Honor, under Section D of the plea agreement, we discussed the fact that this is a 10 to life sentence. And Mr. Barnes and I-- and of course that part, we discussed that. You know, there is always a chance, always, that he could have a chance to get the safety valve and that-- and hopefully he wouldn't have to do at least that minimum 10 years in jail. But that all comes after the presentence investigation and the entirety of the report." Record Document 378, p. 19. At the conclusion of the hearing, the Court accepted Barnes's guilty plea to Count Fourteen.

## II.    Sentencing.

The United States Probation Office prepared a Presentence Investigation Report ("PSR") to which Mr. Carmouche made a number of objections. At the sentencing hearing on May 3, 2012, he objected to the PSR assessing Barnes with five criminal history points, noting that two of those points resulted from misdemeanors and should not be counted, while another point stemmed from conduct to which Barnes allegedly pled guilty only to be released from jail. Barnes's additional two points resulted from the fact that he was on probation when he committed the instant methamphetamine offense. The Court overruled the defense's objection to the points allocated for the misdemeanor convictions, and also explained that it would not allow the defense to collaterally attack Barnes's felony conviction. Thus, the Court found that Barnes had five criminal history points, and it overruled the defense's objection to the criminal history score. Id. at p. 11.

The criminal history score rendered Barnes ineligible for the safety valve, although Mr. Carmouche nevertheless urged the Court to apply the safety valve. In opposition to the defense's argument, the Government stated,

> The Government's position is, is that the criminal history points that are given by the Probation Office and that are not rebutted under this record make [Barnes] ineligible for the safety valve by statute. And since the statute requires the sentence to be imposed, that's it. That's the Government's position; it's plain and simple. The 10-year mandatory minimum must be applied unless the statutory criteria are met. Because of the criminal history, he cannot meet the statutory criteria. That's the Government's position.

Id. at p. 13. The Court agreed, explaining

> The Court notes for the record, that as previously stated, that the

charge to which Mr. Barnes pled is a charge which carries a mandatory minimum sentence of 10 years. The only way that the Court can get out of imposing that 10-year sentence on Mr. Barnes is if in fact Mr. Barnes was safety valve eligible. The Court holds that Mr. Barnes is not safety valve eligible based on the wording of the statute, that he has a criminal history category of III.

And, Mr. Barnes, there is nothing I can do about that.

Id. at p. 13.[3]

At the sentencing hearing, Trooper Haynes explained that agents, working with cooperating co-defendant Thompson, ordered the methamphetamine that Barnes ultimately obtained from Dallas: "we ordered it from Mr. Pimpleton. We had Lauralyn Thompson . . . working under our direction at that time." Record Document 379, p. 23. Trooper Haynes established through his testimony that two different packages of methamphetamine were secured from Pimpleton. One package, which was hidden behind an ice machine at Boomtown Casino, stemmed from Thompson's order, while the other package, which was hidden in Pimpleton's rental vehicle, was intended to be delivered to Winnfield, Louisiana to sell to others. Id. at 23-24. The package found at Boomtown Casino contained 168.9 grams of actual methamphetamine, while the package found in the

---

[3] The Court notes that the following exchange occurred at the sentencing hearing, which indicates that Mr. Carmouche could not recall the *maximum* possible penalty Barnes faced:

| Mr. Carmouche: | Is the sentence in this case, or at least the range, 10 to 40? Is that-- on this charge? |
| Mr. Jarzabek: | 10 to life. |
| Mr. Carmouche: | 10 to life. |
| The Court: | 10 to life. |

This discussion plainly involved the maximum possible penalty of life imprisonment, rather than the mandatory minimum of ten years, which is the crux of the § 2255. Thus, there is no prejudice stemming from the above discussion.

rental vehicle contained 137.3 grams of actual methamphetamine. Id. at p. 21, 24.

The PSR held Barnes accountable for only 168.9 actual grams of methamphetamine.[4]  Record Document 281, p. 5, ¶ 24.  Mr. Carmouche objected that Barnes pled guilty to only fifty grams of methamphetamine, implying that Barnes should not be held responsible for *more* than fifty grams of methamphetamine.[5]  However, as the record confirms, Barnes pled guilty to fifty grams *or more* of methamphetamine.  Under Title 21, it is the fifty grams itself that triggers the ten year mandatory minimum sentence. This distinction of whether Barnes was held accountable for more than fifty grams at sentencing is not critical to the matter before the Court, as Barnes's § 2255 does not challenge his Guideline calculation or the resultant Guideline range.  Instead, it attacks the mandatory minimum sentence which was triggered by his possession with intent to distribute at least fifty grams of methamphetamine.  Significantly, Barnes has never disputed that the weight of the drugs he transported from Dallas to Shreveport was at least fifty grams.

In its calculation of the Guideline range, the Court found that Barnes began with a level 34, which corresponded to between 150 and 500 grams of actual methamphetamine. The offense level was reduced by four for Barnes's limited role in the offense, and reduced

---

[4] Regardless of whether Barnes was held responsible for 168.9 grams or the total combined weight of both packages he transported from Dallas, which was 306 grams, it would have resulted in the same offense level under the Guidelines, as the range for an offense level 34 was at least 150 grams but less than 500 grams of actual methamphetamine.  See U.S.S.G. § 2D1.1(c).

[5] Mr. Carmouche argued that Barnes's offense level should be a 26 because that corresponded to fifty grams of methamphetamine.

another three levels based on his acceptance of responsibility, resulting in a total offense level of 27. With a total offense level of 27 and a criminal history level III, Barnes's guideline range was 87-108 months. The Court imposed the mandatory minimum sentence of 120 months, but noted that that sentence did not reflect Barnes's overall minimal culpability in the overall conspiracy. Id. at p. 31.

## III.   Appeal.

Barnes timely filed a notice of appeal. [Record Document 308]. Barnes argued on appeal that the Government breached the plea agreement by failing to file a U.S.S.G. § 5K1.1 motion for downward departure based on his substantial assistance. See Record Document 455, pp. 2-3. The Fifth Circuit dismissed this argument, finding that the plea agreement did not require the Government to file a substantial assistance motion, that the possibility of a downward departure did not induce Barnes to plead guilty, and also that the record revealed the only real discussions counsel had about any downward departures involved Barnes's possible eligibility for the safety valve. Id. at pp. 3-4. The court held that the Government did not breach the plea agreement by failing to file a § 5K1.1 motion. Id. at p. 7.

Barnes's appeal also lodged the "novel claim" that the Attorney General's August 12, 2013 Memorandum, entitled "Department Policy on Charging Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug Cases," (the "August 12 Memorandum") entitled him to relief from his sentence. Id. In cases in which a defendant met certain criteria, the August 12 Memorandum allowed prosecutors to decline to charge

defendants with drug quantities that would trigger a mandatory minimum sentence. Id. The Fifth Circuit disagreed with Barnes's contention that he was entitled to a sentence reduction under the August 12 Memorandum, finding that even if it assumed Barnes met the criteria enunciated by the Attorney General, the policy was not applicable to defendants who were already convicted and sentenced. Id. Further, the court noted that the Memorandum itself expressed that it did not create or confer any rights, privileges, or benefits. Id. Accordingly, Barnes was not entitled to any appellate relief or sentencing reduction on the basis of the August 12 Memorandum. Id. The Fifth Circuit affirmed this Court's judgment. Id.

## IV. The Instant § 2255.

On December 16, 2014, Barnes timely filed the instant motion under 28 U.S.C. § 2255.[6] Barnes's petition, which has been amended a number of times, asserts the following grounds for relief, all based on ineffective assistance of counsel. [Record Documents 498, 516, 517, & 543]. First, as to Mr. Carmouche, Barnes claims that he provided ineffective assistance by (1) advising him to enter into a plea agreement when he was not guilty of the charges against him; (2) failing to secure a "binding" plea agreement in which the Government would have agreed either not to apply the mandatory

---

[6] After the Fifth Circuit issued its opinion affirming the district court's judgment, Barnes petitioned for rehearing. The panel denied his petition for rehearing on October 24, 2013. Barnes then had 90 days to seek a petition for writ of certiorari with the Supreme Court. See Sup. Ct. R. 13. Barnes's one-year limitation to file his § 2255 began to run only "upon the expiration of the time for seeking certiorari in the U.S. Supreme Court, even where . . . the appellant [did] not actually file[] such a petition." United States v. Gamble, 208 F.3d 536, 536 (5th Cir. 2000). Thus, the Court finds Barnes's § 2255 petition was timely filed.

minimum to Barnes at sentencing, or it would have filed a substantial assistance motion under 18 U.S.C. § 3553(e), which would have authorized the Court to sentence Barnes without regard to the mandatory minimum; (3) advising him to enter into a plea agreement when Mr. Carmouche should have asserted the defense of entrapment; and (4) failing to review the presentence report with Barnes. Second, as to Barnes's appellate counsel, Ms. Elizabeth Dougherty ("Ms. Dougherty"), Barnes claims that she was ineffective in (1) frivolously arguing on appeal that the Government breached the plea agreement; and (2) failing to seek a limited remand to the district court.

## LAW & ANALYSIS

Under 28 U.S.C. § 2255, a prisoner may move to vacate, set aside, or correct a sentence imposed by a federal court when: (1) the sentence "was imposed in violation of the Constitution or laws of the United States[;]" (2) "the court was without jurisdiction to impose such sentence[;]" (3) "the sentence was in excess of the maximum authorized by law[;]" or (4) the sentence "is otherwise subject to collateral attack." United States v. Scruggs, 691 F.3d 660, 666 (5th Cir. 2012); 28 U.S.C. § 2255(a). "As the Supreme Court holds, '[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal.'" United States v. Cooper, 548 F. App'x 114, 115 (5th Cir. 2013) (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)) (internal quotations and citations omitted). Rather, after a defendant is convicted and exhausts the right to appeal, a court is "entitled to presume that the defendant stands fairly and finally convicted." United

States v. Shaid, 937 F.2d 228, 231–32 (5th Cir. 1991) (quoting United States v. Frady, 456 U.S. 152, 164 (1982) (internal marks omitted).

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Young, 77 F. App'x 708, 709 (5th Cir. 2003) (citing United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992)). Courts may consider claims for ineffective assistance of counsel brought for the first time in a § 2255 motion. See United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996). To successfully state a claim of ineffective assistance of counsel, the petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Failure to establish either prong of the Strickland test will result in a finding that counsel's performance was constitutionally effective. Id.; see also Tucker v. Johnson, 115 F.3d 276, 280 (5th Cir. 1997). The petitioner bears the burden of proof on both components of the Strickland standard. See Strickland, 466 U.S. at 687.

As to the first prong, in determining whether counsel's performance was deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal marks omitted). If a tactical decision is "conscious and informed . . . [, it] cannot be the basis for constitutionally ineffective

assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Crane v. Johnson, 178 F.3d 309, 314 (5th Cir. 1999). "Judicial scrutiny of counsel's performance must be highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Thus, this Court's review "strongly presum[es] that counsel has exercised reasonable professional judgment." United States v. Payne, 99 F.3d 1273, 1282 (5th Cir. 1996) (quoting Lockhart v. McCotter, 782 F.2d 1275, 1279 (5th Cir. 1986)).

To establish the second prong of prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[7] Strickland, 466 U.S. at 694. "A reasonable

_____

[7] The Strickland court outlined the extent of prejudice that must be established by the defendant:

An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment. . . .

. . .

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

. . .

When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.

probability is a probability sufficient to undermine confidence in the outcome." Id. A defendant is not prejudiced if "the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). Self-serving conclusory statements that the outcome would have been different "fall[ ] far short of satisfying Strickland's prejudice element." Sayre v. Anderson, 238 F.3d 631, 635 (5th Cir. 2001). Moreover, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998). The prejudice element requires more than a mere allegation; the defendant must affirmatively prove it. Thompson, 44 F.3d at *2. Because both prongs of Strickland must be satisfied, a court may reject an ineffective assistance of counsel claim upon an insufficient showing of either deficient performance or prejudice, without inquiry into the remaining prong. See Strickland, 466 U.S. at 689-94.

Where, as here, the Defendant has been convicted pursuant to a guilty plea, the analysis is slightly different. The only claims that survive a guilty plea are claims implicating the validity of the plea itself. See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000). Generally, "once a guilty plea has been entered, all nonjurisdictional defects in the proceedings against a defendant are waived, and the waiver includes all claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." United States v. Cavitt, 550

---

Strickland, 466 U.S. at 691-95.

F.3d 430, 441 (5th Cir. 2008) (internal marks omitted). With respect to plea advice, the court must determine whether the plea was knowing and voluntary, that is, whether the lawyer was familiar with the relevant facts and law, such that his advice permitted the accused to make an informed and conscious choice to plead guilty. Id. at 440–41. As the Fifth Circuit has advised, defense counsel must

> actually and substantially assist his client in deciding whether to plead guilty. It is his job to provide the accused an understanding of the law in relation to the facts. The advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. In other words, if the quality of counsel's service falls below a certain minimum level, the client's guilty plea cannot be knowing and voluntary because it will not represent an informed choice. And a lawyer who is not familiar with the facts and law relevant to his client's case cannot meet that required minimal level.

Id. at 440.

"For a plea to be knowing and voluntary, the defendant must be advised of and understand the consequences of the guilty plea." United States v. Gaitan, 954 F.2d 1005, 1011 (5th Cir. 1992) (internal marks omitted). The Fifth Circuit has explained that as long as a defendant understands the length of imprisonment and the fine that might possibly be imposed at sentencing, then he is fully aware of the consequences of his guilty plea. United States v. Young, 981 F.2d 180, 184 (5th Cir. 1992); United States v. Rivera, 898 F.2d 442, 447 (5th Cir. 1990). "In order to prove prejudice for an ineffective assistance of counsel claim in the context of a guilty plea, the habeas petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty

and would have insisted on going to trial." <u>Cavitt</u>, 550 F.3d at 441 (internal marks omitted).

## I.   Assistance of Counsel Before the District Court.

As previously mentioned, Barnes submits that Mr. Carmouche provided ineffective assistance of counsel by (1) advising him to enter into a plea agreement when he was not guilty of the charges against him; (2) failing to secure a "binding" plea agreement in which the Government would have agreed either not to apply the mandatory minimum to Barnes at sentencing, or it would have filed a substantial assistance motion under 18 U.S.C. § 3553(e), which would have authorized the Court to sentence Barnes without regard to the mandatory minimum; (3) advising him to enter into a plea agreement when Mr. Carmouche should have asserted the defense of entrapment; and (4) failing to review the presentence report with Barnes.  These will be discussed in turn below.

### A.   <u>Voluntariness of the Guilty Plea.</u>

In the instant case, the Court must first address the voluntariness of Barnes's guilty plea, as that impacts the ineffective assistance of counsel claims he has raised in his § 2255 petition.  First, the Court finds Barnes was aware of the length of imprisonment he was facing, as the mandatory minimum ten year sentence was precisely documented in the written plea agreement Barnes signed.  Record Document 199, p. 2.  Barnes also agreed to the following statement contained in his plea agreement:

> I have read this plea agreement and have discussed it with my attorney. I fully understand the plea agreement and accept and agree to it without reservation.  I do this voluntarily and of my own free will.  No threats have

been made to me, nor am I under the influence of anything that could impede my ability to fully understand this plea agreement.

Record Document 199, p. 5. In another document signed in connection with his guilty plea, Barnes agreed that he had discussed the charges against him with his attorney, he understood the nature of the charges, as well as the maximum possible penalties he faced. Id. at p. 1. Further, Barnes agreed that he understood he had the right to plead not guilty, that his guilty plea was a free and voluntary act, "and that the only reason I am pleading guilty is that I am in fact guilty as charged." Id. at pp. 1-2. Documents signed by a defendant at his plea hearing are entitled to great evidentiary weight. See United States v. Abreo, 30 F.3d 29, 32 (5th Cir. 1994). Barnes's signature on the guilty plea documents is prima facie proof of the validity of the plea. See Theriot v. Whitley, 18 F.3d 311, 314 (5th Cir. 1994).

Second, the discussion between the Court and Barnes at the hearing confirms that Barnes was aware that he was facing a statutory mandatory minimum sentence of ten years. At the guilty plea, the Court stated,

| | |
|---|---|
| The Court: | Okay. All right. So mandatory minimum is 10 years in prison, five years of supervised release, and $100 for a special assessment. The maximum is life in prison or a fine of $10 million, or both, and the special assessment of $100. Did you understand that that is the maximum? |
| The Defendant: | Yes, ma'am. |
| The Court: | And these are the minimum and maximum sentences I might impose on your guilty plea to Count 14. Did you understand that, sir? |

The Defendant:     Yes, ma'am.

Record Document 378, p. 21. The Court also reviewed with Barnes the elements of the

offense to which he was pleading and ensured that Barnes understood those elements and

how they applied to the charges against him.

At another point during that same hearing, in Barnes's presence, Mr. Carmouche

stated,

> Your Honor, under Section D of the plea agreement, we discussed the fact
> that this is a 10 to life sentence. And Mr. Barnes and I-- and of course that
> part, we discussed that. You know, there is always a chance, always, that
> he could have a chance to get the safety valve and that-- and hopefully he
> wouldn't have to do at least that minimum 10 years in jail. But that all
> comes after the presentence investigation and the entirety of the report.

Id. at p. 19.

Thus, it is apparent that not only was Barnes advised of the mandatory ten year

penalty he faced, he also knew that his attorney was hopeful that he would be safety valve

eligible in order to avoid having to serve all ten years.

Under oath, Barnes told the Court that his plea was free and voluntary; that it was

not threatened, forced, or coerced; that it was done with the advice of counsel; and that

he was pleading guilty because he was, in fact, guilty. Record Document 378 at p. 17.

"Although [a petitioner's] attestations to voluntariness are not an absolute bar to raising

this claim, [a petitioner] face[s] a heavy burden in proving that [he is] entitled to relief

because such testimony in open court carries a strong presumption of verity." DeVille v.

Whitley, 21 F.3d 654, 659 (5th Cir. 1994). The plea documents and the hearing transcript

negate Barnes's claim that his plea was not entered knowingly or voluntarily. Barnes has submitted nothing to contradict that evidence. Therefore, his claim must fail.

B.    Counsel's Advice To Plead Despite Barnes's Alleged Innocence.

Notwithstanding the above conclusion that Barnes's plea was knowing and voluntary, the Court finds that Barnes has nevertheless failed to demonstrate that Mr. Carmouche was ineffective in advising him to plead guilty to Count Fourteen-- possession with intent to distribute. Much of Barnes's § 2255 attacks the conspiracy charged in Count One, asserting that Barnes did not have an agreement with his co-defendants to distribute methamphetamine. But what those arguments overlook is the fact that Barnes did not plead guilty to Count One; thus, the conspiracy charge and the proof required to sustain it are immaterial to the § 2255 issues before the Court. Simply put, Barnes's belief that he is not guilty of the conspiracy charged in Count One because Thompson cooperated with the DEA and that his alleged innocence on Count One somehow automatically results in his innocence on Count Fourteen is legally unsubstantiated and meritless.

At no point has Barnes shown that there is a lack of evidentiary proof underlying Count Fourteen. To the contrary, he agreed with Trooper Haynes's testimony that, in exchange for money, he picked up a package of methamphetamine in Dallas and brought it to Shreveport on a Greyhound Bus. His § 2255 does not dispute those facts. Nor does he dispute that the quantity of methamphetamine was at least fifty grams, sufficient to trigger the statutory mandatory minimum. Therefore, the Court refuses to find that Mr.

Carmouche erred in advising Barnes to plead guilty in light of this uncontroverted evidence of his guilt.

### C.    More Favorable Plea Agreement.

With respect to the contention that Mr. Carmouche failed to secure a more favorable plea agreement,[8] the Court finds Barnes has not established that the plea agreement he now desires was even available to him at the time of his plea.  For a myriad of reasons not here relevant, this Court and the majority of courts within this district do not accept plea agreements that bind the court to sentencing agreements made by counsel.  Furthermore, there is no evidence whatsoever to suggest the United States Attorney's Office would ever have considered entering into such a plea agreement in this case.  Thus, not only has Barnes failed to show that such a plea agreement was ever available to him, he cannot convince this Court that it would have actually accepted such a plea agreement.[9]  Mr. Carmouche cannot be deemed ineffective for failing to secure something which likely never existed and would not have been approved by this Court.

---

[8] The Government failed to address this argument in its response to Barnes's § 2255 motion.

[9] This statement by the Court addresses both prongs of Strickland- deficient performance and prejudice.  As announced in Missouri v. Frye, 566 U.S. 133, 148 (2012), a defendant who has shown a reasonable probability that he would have accepted an earlier, more favorable plea offer- a standard which strongly suggests that the Government actually proposed the offer--, must also show that there is a reasonable probability that neither the prosecution nor the court would have prevented the offer from being accepted or implemented.  "This further showing is of particular importance because a defendant has no right to be offered a plea, nor a federal right that the judge accept it."  Id. (internal citations omitted).

Barnes has also failed to establish that Mr. Carmouche was ineffective in failing to secure a plea agreement that would have required the Government to file a substantial assistance motion. As evidenced by the plea documents Barnes signed at his own plea hearing and pursuant to 18 U.S.C. § 3553(e), substantial assistance motions reflect "a defendant's substantial assistance in the investigation or prosecution of another person . . . ." 18 U.S.C. § 3553(e). The record in this matter confirms that Barnes was unable to render substantial assistance, not necessarily through any fault of his own, but rather because he was a drug courier and did not have much information to offer investigators. Barnes cannot establish that Mr. Carmouche was ineffective for failing to secure relief which is, in itself, contrary to law. Accordingly, Barnes cannot establish that Mr. Carmouche rendered deficient representation, and therefore he has failed to satisfy the first prong of <u>Strickland</u>. This is fatal to his claim.

Even if Barnes could prove <u>Strickland</u>'s first prong, which he has not, he would still be unable to establish prejudice from Mr. Carmouche's alleged failure to secure a binding plea agreement. At this stage, Barnes is required to demonstrate that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Cavitt</u>, 550 F.3d at 441. Barnes has not even attempted to allege that he would have insisted on going to trial. Rather, the alleged prejudice he asserts is (1) the lack of a more favorable plea agreement or (2) that the Court would not have accepted his guilty plea if it understood that he was not guilty "and that would have ended the case." Record Document 517, p. 14. How Barnes knows the

case "would have ended" is baffling in light of the overwhelming evidence of his guilt, all of which Barnes agreed with at his guilty plea. He has not credibly or logically disputed that evidence. Mere allegations of a different outcome-- which themselves fall far short of claiming the defendant would have gone to trial absent his attorney's deficient advice-- are insufficient to satisfy the burden Barnes bears at this stage. This claim fails.

   D.   The Entrapment Defense.

Barnes next contends that Mr. Carmouche was deficient in advising him to plead guilty instead of asserting an entrapment defense. "The critical determination in an entrapment defense is whether criminal intent originated with the defendant or with government agents." United States v. Theagene, 565 F.3d 911, 918 (5th Cir. 2009) (citation omitted). "Entrapment occurs when the government causes an offense to be committed by a person other than one ready to commit it." Id. (internal marks omitted). "The government may not implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute." Id. (internal marks omitted) (quoting Jacobson v. United States, 503 U.S. 540, 548 (1992)).

Entrapment is an exculpating defense, placing the burden on the defense to prove it is actually entitled to an entrapment jury instruction. To do so, the defendant must present a prima facie case showing that the government's conduct created a substantial risk of entrapment. See id. "This requires the defendant to make a prima facie showing of (1) his lack of predisposition to commit the offense and (2) some governmental

involvement and inducement more substantial than simply providing an opportunity or facilities to commit the offense." Id. If the defendant satisfies his proof, the burden shifts to the government to prove beyond a reasonable doubt that the defendant was "disposed to commit the offense before the government first approached him." Id.

"The question of entrapment is generally one for the jury . . . ." Id. Thus, the entrapment defense is a trial defense, and Barnes would have been required to proceed to trial to assert it. However, notably absent from all of his filings is a claim by Barnes that he actually desired to or would have gone to trial to present an entrapment defense.

Regardless, the Court finds that Barnes cannot satisfy a prima facie case of entrapment, as he cannot prove either one of the necessary elements. That is, he has not demonstrated his lack of predisposition to commit the drug offense, nor has he shown that the Government's involvement- which amounts to asking Thompson to order a half pound of methamphetamine- provided anything more than an opportunity to commit the offense. The Government had no involvement with or control over Pimpleton or Moody, the very persons who hired Barnes, directed his actions, and coordinated his travel plans. Pimpleton and Moody did not know that Thompson was, by that time, working with the DEA. The Government had no involvement or interaction with Barnes. It did not direct or control his actions, and there is absolutely no evidence that it induced Barnes into committing this crime. Therefore, the Government's acts simply provided Pimpleton, Moody, and Barnes with the opportunity to transport a half-pound of methamphetamine into the Shreveport, Louisiana area. "[A] defendant's ready and willing participation in government-solicited

criminal activity, standing alone, is sufficient to prove predisposition." <u>United States v. Reyes</u>, 239 F.3d 722, 739 (5th Cir. 2001). Further, contrary to Barnes's belief, "it is proper (i.e., not an 'inducement') for the government to use a 'sting,' at least where it amounts to providing a defendant with an 'opportunity' to commit a crime." <u>United States v. Gutierrez</u>, 343 F.3d 415, 420 (5th Cir. 2003).

Here, the record demonstrates that Barnes was not entrapped, and he has supplied no cogent or compelling reason to find otherwise. These same facts, viewed at the time of the guilty plea, would likely have led Mr. Carmouche to the same reasonable conclusion. Mr. Carmouche cannot be said to have performed deficiently for failing to pursue an entrapment defense at trial, when that defense was wholly unsupported by the record. Defense counsel does not perform deficiently by declining to pursue frivolous, futile, or non-meritorious motions or objections. <u>See generally</u>, <u>Johnson v. Cockrell</u>, 306 F.3d 249, 255 (5th Cir. 2002); <u>Koch v. Puckett</u>, 907 F.2d 524, 527 (5th Cir. 1990).

Again, even if Barnes had established deficient representation, he has not established prejudice from Mr. Carmouche's failure to pursue an entrapment defense. As previously stated, at this stage, Barnes has to show that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Cavitt</u>, 550 F.3d at 441. Barnes has not alleged he would have gone to trial, which is of critical importance in the § 2255 context. Furthermore, a self-serving assertion that a different outcome would have resulted is insufficient to satisfy the petitioner's burden. <u>See</u> <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999) ("An

attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). These claims of ineffective assistance related to Mr. Carmouche's advice to plead guilty are without merit.

     E.    <u>Review of the PSR.</u>

     Barnes's next claim is that Mr. Carmouche was constitutionally ineffective for failing to review the PSR with him prior to sentencing. Barnes contends that four factual paragraphs-- paragraphs 15, 17, 19, and 20-- of the PSR were inaccurate, and if he had reviewed the PSR with his attorney before sentencing, he could have identified the errors and had them corrected. The Court notes that it began the sentencing proceeding by asking, "Have defense counsel and the defendant had a chance to review the Presentence Report?" Record Document 379, p. 3. Mr. Carmouche responded, "Yes, Your Honor." <u>Id.</u> at 4. Barnes did not claim otherwise at that time. Thus, Barnes's contention that he never reviewed the PSR is in conflict with the record in this matter.

     With respect to the errors contained in paragraphs 19 and 20, Mr. Carmouche did, in fact, alert the Court to those inaccuracies. The Court agreed that those paragraphs were inartfully worded and orally amended the PSR. The PSR filed into the record reflects those corrections.

     Barnes asserts that paragraph 15 incorrectly reflects that he met with Thompson at an EZ Mart in Winnfield, Louisiana and sold Thompson 15.1 grams of methamphetamine. This is actually paragraph 16 of the PSR, not paragraph 15. The Court agrees that Barnes

did not sell methamphetamine to Thompson at this time, as reflected in this paragraph. The final paragraph that Barnes asserts is incorrect is paragraph 17, which reflects the following:

> 17. Contact was made with the DEA for additional information regarding this **defendant's** criminal culpability. The DEA reported on January 10, 2012, Dwight L. Moody, Jr., transported the **defendant** from Winnfield, Louisiana, to the Greyhound Bus Station in Shreveport, Louisiana, where Dwight L. Moody, Jr., gave the **defendant** $100 for a bus ticket to Dallas, Texas, and an envelope containing $800 which Moody owed Pimpleton for drugs.

Record Document 281, p. 5 (emphasis in original). Barnes has not identified what, specifically, is inaccurate in this paragraph. Aside from the date being January of 2012 rather than June of 2011, the substance of the paragraph matches the testimony of Trooper Haynes at both the guilty plea and sentencing hearings.[10]

Assuming without deciding that Mr. Carmouche failed to review the PSR with Barnes prior to sentencing, Barnes's ineffective assistance claims nevertheless fail because he has not demonstrated prejudice. Barnes must show that there is a reasonable probability that, but for Mr. Carmouche's errors, the result of the proceeding would have been different. Here, Barnes has not identified any way in which his sentence would have been different had he reviewed the PSR before sentencing. Indeed, Mr. Carmouche himself moved to correct the inaccuracies in paragraphs 19 and 20. The date error in paragraph 17 had no impact upon the sentencing proceeding in any way. And finally, the drug sale reflected in

---

[10] Again, the confusion in this paragraph may stem from inartful wording. That is, it is possible the Probation Officer meant that the information was conveyed to him by the DEA on January 10, 2012, not that the criminal offense occurred on that date.

paragraph 15 was not held against Barnes at sentencing. Accordingly, Barnes's claim that Mr. Carmouche was ineffective for failing to review the PSR with him is without merit.

## II.   Assistance of Counsel on Appeal.

Barnes's final two claims of ineffective assistance relate to his appellate counsel, Ms. Dougherty. First, Barnes asserts that Ms. Dougherty frivolously argued on appeal that the Government breached the plea agreement. Barnes concedes that this "breach of plea" argument was not supported by the record. However, he has not explained how or why Ms. Dougherty rendered constitutionally ineffective counsel by raising an issue that ultimately proved unsuccessful. Nor has he asserted any prejudice resulting therefrom. This claim is without merit.

Next, Barnes faults Ms. Dougherty for making a "last ditch attempt" at relief by submitting a petition for panel rehearing based upon the August 12 Memorandum and the August 29, 2013 Memorandum (the "August 29 Memorandum") issued by the Attorney General. Ms. Dougherty had, in fact, raised the August 12 Memorandum during the appeal; the Fifth Circuit concluded that the provisions of the Memorandum did not entitle Barnes to any relief. In the petition for rehearing, Ms. Dougherty raised the August 29 Memorandum, which had been released approximately two weeks before the panel issued its opinion affirming the district court. The August 29 Memorandum provides additional guidance for the August 12 Memorandum. In the petition for rehearing, Ms. Dougherty argued that the Memorandums did not preclude the retroactive application of the policy to

defendants who already have been sentenced, and thus they did not preclude application to Barnes. The Fifth Circuit denied the petition for rehearing.

Barnes faults Ms. Dougherty for not seeking a limited remand:

> to the district court to allow the Government to asserted [sic] its position on the record whether Mr. Barnes was in fact entitled to the new policy change and its instructions, there is a very reasonable chance that the panel of the Fifth Circuit would have made such a limited remand in light of the evolving nature of the law on sentencing in drug cases, and in light of the new DOJ policy as expressed in the August 12, 2013 and August 29, 2013, memorandums, there is a reasonable probability that the Government during the remand, would have redated [sic] the amount of methamphetamine from the indictment as to Mr. Barnes only.

Record Document 517, pp. 19-20.

This argument fails for several reasons overlooked by Barnes. According to the Memorandums, Barnes was not entitled to relief because he did not meet the criteria announced by the Attorney General. First, the policy was applicable to defendants who had not yet pled guilty, and ideally, had not yet been charged. Indeed, this Memorandum documented a shift in the Department of Justice's *charging* policies. When the August 12 Memorandum was issued, Barnes was not awaiting adjudication of guilt or even sentencing; rather, he had been sentenced and his case was already on appeal. Second, the August 29 Memorandum specifically stated that it was not retroactively applicable to cases in which the defendant had already been sentenced: "For cases in which sentence has been imposed: the policy is not retroactively applicable. . . . Prosecutors should not disturb the sentence in a case in which the sentence has been imposed, whether or not the case is on direct appeal or in some other stage of post-conviction litigation." Thus, under

the plain language of the Memorandum, the policy was inapplicable to Barnes. Third, Barnes had five criminal history points. According to the Memorandums, relief should be inapplicable for defendants who have "significant criminal history," which is defined as three or more criminal history points. Finally, the August 29 Memorandum clarifies that it is not "intended to create or confer any rights, privileges, or benefits in any matter, case, or proceeding."

Part of Barnes's § 2255 focuses on the argument that, on remand, the Government could have decided whether to apply this policy to his case, and taking this thought to its logical conclusion, he has been deprived of the opportunity to have the Government reconsider the charges against him. Again, Barnes ignores a critical fact-- the Government did, indeed, have the opportunity to weigh in on the applicability of the Memorandums to Barnes's case. Consistent with the rationale behind the Memorandums, it unequivocally represented to the Fifth Circuit that Barnes was entitled to no benefits or sentencing reductions. Therefore, Ms. Dougherty cannot be deemed deficient for failing to petition for rehearing to ask for a limited remand to seek clarification on Barnes's sentencing options under the Memorandums when the Government had already documented its position that Barnes was entitled to absolutely no benefits under this new charging policy. Again, defense counsel does not perform deficiently by failing to pursue frivolous, futile, or non-meritorious motions or objections. See generally, Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990).

In any event, Barnes has once again failed to establish the requisite showing of prejudice stemming from this alleged default. A defendant is not prejudiced if "the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." <u>Fretwell</u>, 506 U.S. at 372. Accordingly, this claim of ineffective assistance of counsel on appeal must fail.

## CONCLUSION

For the foregoing reasons, based on the record and the relevant jurisprudence, this Court finds that Barnes has failed to demonstrate that either his trial counsel or his appellate counsel performed deficiently, and that any deficiency in counsel's respective performance prejudiced Barnes under <u>Strickland</u>. Therefore, Barnes's § 2255 motion [Record Documents 498, 516, 517, & 543] be and is hereby **DENIED**. All other motions pending in this case are likewise **DENIED as moot**, and this matter is hereby **DISMISSED WITH PREJUDICE**.

Pursuant to Rule 11(a) of the Rules governing § 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. Unless a Circuit Justice or a Circuit or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeal. In this case, a certificate of appealability is **DENIED** because Barnes has failed to demonstrate a substantial showing of the denial of a constitutional right.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 30th day of May, 2017.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE